ROBAINA & KRESIN PLLC
5343 N. 16th Street, Suite 200
Phoenix, Arizona 85016
Telephone: (602) 682-6450
Facsimile:  (602) 682-6455
dck@robainalaw.com
David C. Kresin (019858)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

Thomas Ryan Warren,

    Plaintiff,

    vs.

John Butler and Melody Butler, husband and wife; Scottsdale Treatment, Inc., an Arizona corporation;

    Defendants.

) No.
)
) **COMPLAINT**

Plaintiffs Thomas Ryan Warren ("Warren") for his Complaint alleges as follows:

1. Warren at all relevant times was a resident of Maricopa County, Arizona and worked in Maricopa County, Arizona.

2. Defendant John Butler ("Butler") at all relevant times was a resident of Maricopa County, Arizona and was the Chief Executive Officer, Manager, and sole member of Scottsdale Treatment Institute, PLC ("STI PLC"), an Arizona limited liability company doing business in Maricopa County, Arizona. At all relevant times, Butler exercised significant economic control over STI PLC and participated in the decisions: (a) not to pay Warren the minimum wage required by state and federal law; (b) not to pay Warren for all hours worked; (c) not to pay Warren overtime compensation for all hours worked over 40 in a workweek; and (d) to terminate Warren's employment in retaliation for engaging in protected activity under the state and federal wage and hour laws.

3. Defendant Scottsdale Treatment, Inc. ("ST Inc.") is a related corporation. At all relevant times, Butler has been the President, Secretary, Treasurer, Director and sole shareholder of ST Inc. At all relevant times, STI PLC and ST Inc. have been under

the common control of Butler. Upon information and belief, Butler and STI PLC have funneled the revenue and assets of STI PLC to and/or through ST Inc.

4. Upon information and belief, Melody Butler is married to Butler and all actions by Butler were taken on behalf of their marital community. Melody Butler has been named as a defendant solely for community property purposes.

5. The events giving rise to these causes of action occurred in Maricopa County, Arizona.

6. This Court has personal jurisdiction over the Defendants and venue is proper in this Court.

7. From approximately 2006 to April 22, 2014, STI PLC and Butler employed Warren as a behavioral health technician/counselor.

8. Throughout that time, Mr. Warren competently performed his job.

9. Throughout Warren's employment, STI PLC and Butler compensated Warren only for his actual time spent counseling, including individual screenings, group sessions, one-on-one counseling, and revocation evaluations.

10. As compensation, STI PLC and Butler paid Warren a set amount of money for each different type of consultation session, which lasted a specifically designated amount of time.

11. Warren received no compensation from STI PLC or Butler for attending regular mandatory meetings or for performing regular non-counseling tasks such as administrative work and training of other counselors, or for waiting during and after no-show appointments.

12. Despite paying no compensation for a no-show appointment, STI PLC and Butler required Warren to wait at least fifteen (15) minutes after the start of the consultation and then required him to remain at work waiting for his next scheduled appointment.

13. The no shows occurred most frequently with court-ordered DUI screenings, which STI PLC scheduled only thirty (30) minutes apart for Warren so he

1 was stuck waiting an additional fifteen (15) minutes for the next appointment after being
2 required to wait on premises for the previous client to arrive.

14. At times, Warren had as many as seven (7) no shows on a particular day.

15. STI PLC staff controlled all appointment scheduling for Warren.

16. In March 2014, after learning that he should be paid for all time worked, Warren began complaining about not being paid for waiting time.

17. On March 12, 2014, Warren emailed his supervisors Karen Mavrikos and Whitedove Ballog regarding his belief that that he should be paid for time spent waiting on no-show appointments.

18. With the email, Warren forwarded a U.S. Department of Labor Fact Sheet regarding the requirement of paying for waiting time.

19. That same day, Mavrikos responded that she had forwarded the information and Fact Sheet to CEO Butler.

20. Approximately one week later, Warren met with Butler and Mavrikos regarding the issue. In that meeting, Butler acknowledged receiving the Fact Sheet that Warren had forwarded, but informed Warren that he did not agree with the information provided in the Fact Sheet or that Warren was entitled to compensation for such time.

21. In that meeting, Warren explicitly stated his disagreement with Butler on that issue and that he believed he should receive compensation for all time worked.

22. On March 27, 2014, in a staff meeting, Warren again brought up his concern that the counselors were not being compensated for time spent waiting on clients who did not show up.

23. The next day, Butler emailed Warren and invited him to have another meeting to discuss the issue.

24. That meeting between Butler and Warren occurred on April 22, 2014.

25. Earlier that morning, Ballog had sent Warren an email indicating that he would no longer be scheduled for 30-minute DUI screenings, a practice that STI PLC had engaged in for at least the previous two years.

26. At noon that day, Butler, Mavrikos and Ballog met with Warren. In the meeting, Butler asked Warren what he wanted to resolve the issue and Warren responded that he wanted to be compensated for all of his time worked.

27. Warren presented Butler with calculations showing that he was owed approximately $6,000-$8,000 per year for uncompensated time related to canceled appointments. In response, Butler told Warren "I'll see you in court" and ended the meeting.

28. Warren left the office at approximately 12:30 p.m.

29. At 3:30 p.m. on April 22, 2014, Warren returned to the STI PLC office. At that time, Butler asked Warren if he had received the letter from STI PLC's lawyer Paul Crane.

30. When Warren indicated he had not received it, Butler handed him the letter terminating Warren's employment and told him to take his personal effects and leave the premises.

31. In the letter incorrectly dated April 21, Butler referenced the April 22 meeting in which the only topic was Warren's concerns about not being paid for certain time worked. Butler specifically stated: "Our brief meeting earlier today leaves me convinced that all parties concerned will be better served by terminating your employment, effective immediately."

32. In the letter, Butler likewise specifically referenced that Warren would not be scheduled for any further work after that day and that he should submit a timesheet for work done through April 22, 2014.

33. Throughout his employment, Warren performed at least at a satisfactory level, diligently and competently serving the STI PLC. Warren never received any discipline, formal correction, or warnings regarding performance.

**Count One (Minimum Wage Violations Under the Arizona Minimum Wage Act)**

34. Warren incorporates herein all previous allegations in this Complaint.

- 4 -

35. At all relevant times, Warren was an employee under the Arizona Minimum Wage Act, A.R.S. § 23-363 *et seq.*

36. At all relevant times, Butler and STI PLC were an employer under the Arizona Minimum Wage Act, A.R.S. § 23-363 *et seq.*

37. STI PLC and Butler failed to pay Warren the applicable minimum wage for all hours worked, as required by A.R.S. § 23-363 and implementing regulations.

38. Pursuant to A.R.S. § 23-364, Warren is entitled to recover from Butler the balance of the wages owed, including interest thereon, and an additional amount equal to twice the underpaid wages.

39. Warren also is entitled to recover his attorneys' fees and costs incurred herein pursuant to A.R.S. § 23-364.

**Count Two (Minimum Wage Violations Under the Fair Labor Standards Act)**

40. Warren incorporates herein all previous allegations in this Complaint.

41. At all relevant times, Butler and STI PLC were an employer covered under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

42. At all relevant times, Warren was an employee covered under the FLSA.

43. STI PLC and Butler failed to pay Warren the applicable minimum wage for all hours worked in violation of the FLSA.

44. STI PLC and/or Butler's conduct described above was willful.

45. Warren is entitled to recover from Butler his unpaid minimum wages due and an equal amount as liquidated damages.

46. Warren is entitled to recover his attorneys' fees incurred herein pursuant to 29 U.S.C. § 216.

**Count Three (Overtime Violations Under the Fair Labor Standards Act)**

47. Warren incorporates herein all previous allegations in this Complaint.

48. At all relevant times, Butler and STI PLC were an employer covered under the FLSA.

49. At all relevant times, Warren was an employee covered under the FLSA.

50. Warren worked approximately 55-60 hours per week in his employment.

51. STI PLC and Butler failed to pay Warren overtime compensation for all work weeks in which Warren worked in excess of forty (40) hours, in violation of the FLSA.

52. STI PLC and/or Butler's conduct described above was willful.

53. Warren is entitled to recover from Butler his unpaid overtime compensation and an equal amount as liquidated damages.

54. Warren is entitled to recover his attorneys' fees incurred herein pursuant to 29 U.S.C. § 216.

### Count Four (Retaliation Under the Arizona Minimum Wage Act)

55. Warren incorporates herein all previous allegations in this Complaint.

56. At all relevant times, Warren was an employee under A.R.S. § 23-363 *et seq.*

57. At all relevant times, STI PLC and Butler were an employer under A.R.S. § 23-363 *et seq.*

58. STI PLC and Butler violated A.R.S. § 23-364 by terminating Warren's employment in retaliation for asserting his claim or right under the Arizona Minimum Wage Act, for assisting any other person in doing so, and/or for informing any person about their rights.

59. As a direct result of STI PLC and Butler's conduct described above, Warren has suffered emotional distress, reputational harm, lost income in the form of past, present and future wages and benefits, and other monetary and non-monetary benefits due him.

60. As a direct result of STI PLC and Butler's conduct described above, Warren is entitled to recover from Butler damages sufficient to compensate the employee for the harm suffered and additional amounts to deter future violations of not less than one hundred fifty dollars for each day that the violation continued or until legal judgment against Butler is final.

61. Warren also is entitled to recover his attorneys' fees and costs incurred herein pursuant to A.R.S. § 23-364.

### Count Five (Retaliation Under the Fair Labor Standards Act)

62. Warren incorporates herein all previous allegations in this Complaint.

63. At all relevant times, STI PLC and Butler were an employer covered under the FLSA.

64. At all relevant times, Warren was an employee covered under the FLSA.

65. STI PLC and Butler terminated Warren's employment because he engaged in protected activity by reporting violations of the FLSA, as set forth above.

66. STI PLC and Butler's conduct described above was willful.

67. As a direct result of STI PLC and Butler's conduct described above, Warren has suffered emotional distress, reputational harm, lost income in the form of past, present and future wages and benefits, and other monetary and non-monetary benefits due him.

68. As a direct result of STI PLC and Butler's conduct described above, Warren seeks recovery of damages in an amount to be proven at trial including damages for economic loss and compensatory damages for pain and suffering, emotional distress, harm to reputation and other losses.

69. Warren's claims arise under the FLSA, and he is therefore entitled to recover his attorneys' fees incurred herein pursuant to 29 U.S.C. §216.

### Count Six (Fraudulent Transfer under A.R.S. § 44-1001 *et seq.*)

70. Warren incorporates herein all previous allegations in this Complaint.

71. At all relevant times, Warren was a creditor with a claim under A.R.S. §44-1001.

72. Upon information and belief, Butler and STI PLC have declared and/or paid a distribution and other payments to Butler and ST Inc.

73. At the time of such distributions and payments, STI PLC was insolvent under A.R.S. § 44-1002 because (1) the sum of its debts was greater than all of its assets at a fair valuation; or (2) STI PLC was generally not paying its debts as they were due.

74. Pursuant to A.R.S. § 44-1004, all transfers made from STI PLC to Butler and ST Inc. were fraudulent because STI PLC and Butler (1) made the transfers with actual intent to defraud Warren; or (2) made the transfers without receiving a reasonably equivalent value for the transfers and STI PLC had incurred or was incurring obligations beyond its ability to pay.

75. Pursuant to A.R.S. § 44-1005, all transfers made from STI PLC to Butler and ST Inc. after Warren's claim arose were fraudulent because STI PLC did not receive a reasonably equivalent value in exchange for the transfers and STI PLC was insolvent at the time of or became insolvent as a result of the transfers.

76. As a result of the fraudulent transfers, STI PLC does not have the funds to pay Warren's judgment against STI PLC and Warren is entitled to all of the remedies under A.R.S. 44-1007 including but not limited to: (1) garnishment against the fraudulent transferees or the recipient of the fraudulent obligation; (2) avoidance of the fraudulent transfers; (3) attachment or other provisional remedy against the assets transferred or other property of the transferee; and (4) an injunction against further disposition of the transferred assets.

77. This claim arises out of contract and therefore Warren is entitled to recover his reasonable attorney's fees incurred in prosecuting this claim.

78. Warren demands a jury trial on all issues triable to a jury.

WHEREFORE, Plaintiff Thomas Ryan Warren prays for judgment against John Butler and Melody Butler, husband and wife, and Scottsdale Treatment Inc. as follows:

A. For an award of unpaid minimum wages against The Butlers in an amount to be proven at trial;

B. For an additional amount against The Butlers equal to twice the unpaid minimum wages under A.R.S. § 23-364(G);

C. For an award of unpaid overtime compensation against The Butlers in an amount to be proven at trial;

D. For an award of compensatory damages against The Butlers for lost back wage, lost front wages, other economic losses, pain and suffering, emotional distress, harm to reputation and other losses incurred by Warren as a result of Butler and STI PLC's conduct;

E. For an award against The Butlers of the statutory damages of at least $150 per day under A.R.S. § 23-364(G);

F. For an award of liquidated damages against The Butlers;

G. For an award against Defendants of the value of the assets fraudulently transferred;

H. For a garnishment against Defendants;

I. For an avoidance of the fraudulent transfers or obligations;

J. For an attachment or other provisional remedy against the assets transferred or other property of Defendants;

K. For an injunction against further disposition by Defendants of the assets transferred or other property;

L. For an award of attorneys' fees and related expenses;

M. For an award of prejudgment and post-judgment interest;

N. For an award of Warren's costs of suit incurred herein; and,

O. For an award of such other relief as the Court may deem just and proper.

DATED this 16th day of February, 2016.

            ROBAINA & KRESIN PLLC


           By /s/David C. Kresin
            David C. Kresin
            Attorneys for Plaintiff